IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2017 MAR 16 PM 2:58

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____

**MONARCH INVESTMENTS, LLC,**
        **Plaintiff,**

-vs-

**FERNANDO AURRECOECHEA,
ALEJANDRO AURRECOECHEA,
ELIAS V. LORENZANA JR.,
LORENZANA & SARHAN, INC., THE
LORENZANA LAW FIRM, PC, NASH
MARTINEZ, and TEXAS ECONOMIC
REGIONAL CENTER HOLDING
COMPANY, LLC,**
        **Defendants.**

CAUSE NO.:
A-14-CA-01019-SS

## <u>ORDER</u>

BE IT REMEMBERED on this day, the Court reviewed the file in the above-styled cause, and specifically Plaintiff Monarch Investments, LLC's Motion for Attorneys' Fees [#185] and Defendants Alejandro Aurrecoechea and Fernando Aurrecoechea's Response [#189] in opposition; Defendant Fernando Aurrecoechea's Motion for Attorneys' Fees [#186] and Monarch's Response [#190] in opposition; the Aurrecoechea Defendants' Motion for a New Trial or to Amend the Judgment [#188] and Monarch's Response [#191] in opposition; as well as Monarch's Bill of Costs [#184] and the Aurrecoechea Defendants' Response [#189] in opposition. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This case involves claims for state and federal securities law violations, common law fraud, and civil conspiracy. As recounted in the Court's Order of December 6, 2016, Plaintiff

Monarch Investments, LLC (Monarch) claims Defendants Alejandro Aurrecoechea, Fernando Aurrecoechea, and Nash Martinez (Defendants) perpetrated a scheme to commit securities fraud by enticing Monarch to invest $900,000 in Wellness Med Clinics, LLC (Wellness), a clinic which Monarch alleges was nothing more than a "sham company . . . where [Monarch's] funds were quickly wasted or misappropriated" by Defendants. Pl.'s Contentions [#129] at 1. Shyam Garg is Monarch's sole manager and member.

This case proceeded to trial from November 7, 2016, through November 9, 2016. On November 10, 2016, the jury returned a verdict finding the Aurrecoechea Defendants (1) sold a security to Monarch in violation of Texas securities law, (2) materially aided Elias Lorenzana, Jr. (Lorenzana) or one another in violating Texas securities law, and (3) conspired with Lorenzana to defraud Monarch. The jury awarded Monarch $98,365.52 in damages arising from the Aurrecoechea Defendants' conspiracy to commit fraud. After trial, the Court granted Monarch's request to forego the jury's damage award in favor of rescinding its $900,000 investment in Wellness. *See* Order of Dec. 6, 2016 [#182] at 8. The Court simultaneously entered its judgment. *See* J. of Dec. 6, 2016 [#183].

Now, both Monarch and Defendant Fernando Aurrecoechea seek to recover their attorneys' fees. Monarch seeks an award of $186,054 for fees associated with its successful prosecution of its Texas Securities Act (TSA) claims, as well as $12,813.25 in costs. Pl.'s Mot. Att'y Fees [#185]; Bill of Costs [#184]. Fernando Aurrecoechea seeks to recover $20,800 in attorneys' fees as the prevailing party under the Texas Theft Liability Act, a claim which Monarch filed on June 24, 2016 and voluntarily dismissed on October 30, 2016. Def.'s Mot. Att'y Fees [#186]; Pl.'s Mot. Dismiss [#133]. The Aurrecoechea Defendants also filed a motion

to amend or alter the Court's judgment, or in the alternative, to grant a new trial. Mot. New Trial [#188]. These motions have been fully briefed and are now ripe for the Court's consideration.

## Application

### I. Renewed Rule 50(b) Motion and Motion for New Trial

#### A. Legal Standards—Rule 50(b) and Rule 59(a)

The Aurrecoechea Defendants seek an order altering the Court's judgment pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative, a new trial pursuant to Federal Rule of Civil Procedure 59(a).

When ruling on a Rule 50(b) motion for judgment as a matter of law, "[a] jury verdict must stand unless there is a lack of substantial evidence, in the light most favorable to the successful party, to support the verdict." *Am. Home Assurance Co. v. United Space All., LLC*, 378 F.3d 482, 487 (5th Cir. 2004). Accordingly, the question for this Court "is whether the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." *Id.* (internal quotation marks omitted); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) ("Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.").

Under Rule 59(a), a motion for new trial may be granted if the jury's verdict was against the great weight of the evidence, the trial was unfair, or some prejudicial error was committed during the trial. FED. R. CIV. P. 59(a); *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985); *Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980). As with a Rule 50(b) motion, the Court views the evidence "in the light most favorable to the jury verdict." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991).

**B.     Application**

At the conclusion of Monarch's case and again after the parties closed the evidence, Defendants moved for judgment as a matter of law under Federal Rule of Civil Procedure Rule 50(a).[1] The Court carried the motion. *See* FED. R. CIV. P. 50(b) ("If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.").

After the jury returned its verdict but before a judgment was entered, Defendants filed a "Motion to Enter Final Judgment," in which they argued Monarch is not entitled to a rescission of its investment in Wellness, in part because a membership interest in Wellness does not constitute a security interest and the TSA therefore does not apply to Monarch's $900,000 investment in Wellness. Defs.' Mot. Entry Final J. [#179] at 2. In yet another post-verdict, pre-judgment filing, Defendants argued there was legally insufficient evidence to support the jury's finding that the Aurrecoechea Defendants violated the TSA by making an untrue statement or omission of material fact. *See* Resp. [#181] at 2. The Court ultimately rejected Defendants' arguments, concluding that under Rule 50(b), there was legally sufficient evidence to support the jury's verdict. *See* Order of Dec. 6, 2016 [#182] at 5–7.

The Aurrecoechea Defendants' instant Rule 50(b) and Rule 59 motion raises these same challenges to the jury's verdict. The Court rejected these arguments in its December 6, 2016 Order, and does so again for the reasons stated previously. *See id.*; *Eastman Chem. Co. v. PlastiPure, Inc.*, No. A-12-CA-057-SS, 2013 WL 5918413, at *2 (W.D. Tex. Oct. 31, 2013)

---

[1] At the close of Monarch's case, Defendants also challenged the Court's subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). The Court orally denied the motion, but failed to reference this holding in its December 6, 2016 Judgment. So the record reflects this decision, the Court amends its Judgment to clarify that the Court considered and denied Defendants' jurisdictional challenge before the case was submitted to the jury.

4

(denying the defendants' renewed Rule 50(b) motion which "reassert[ed] all of the[] grounds for relief previously rejected by the Court"); *see Saffran v. Johnson & Johnson*, No. 2:07–CV–451 (TJW), 2011 WL 4378030, at *1 (E.D. Tex. Sept. 20, 2011) ("The Defendants have preserved their record, and the Court DENIES Defendants' renewed motion [for judgment as a matter of law under Rule 50(b)] for the same reasons it denied Defendants' original motion."). The Aurrecoechea Defendants' motion for judgment as a matter of law, or in the alternative, a new trial is therefore denied.

## II. Attorneys' Fees

Both Monarch and Fernando Aurrecoechea request an award of attorneys' fees. The Court addresses each party's fee motion in turn.

### A. Monarch's Motion for Attorneys' Fees

In its motion for attorneys' fees, Monarch seeks a total award of $186,054, which Monarch contends represents the portion of its attorneys' fees incurred as a result of successfully prosecuting its TSA claims against the Aurrecoechea Defendants.

State law generally governs the determination of attorneys' fees in a suit brought under a state statute permitting attorneys' fees. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 764 (Tex. 2012). Nevertheless, in applying Texas law, courts may look to federal law in analyzing motions for attorneys' fees where the attorney has opted to prove its fees through use of the lodestar method. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 765 (Tex. 2012) ("[I]n applying our state statute, we may draw on the far greater body of federal court experience with lodestar and fee shifting under the similar federal statute. Though not bound to adopt the federal standards, Texas courts may consider them."). Under the TSA, a prevailing party may be awarded its reasonable attorneys' fees if the Court finds such an award "would be equitable in the circumstances." TEX.

REV. CIV. STAT. arts. 581-33(D)(7). Given the jury's finding that the Aurrecoechea Defendants violated the TSA by making an untrue statement or omission of material fact and conspired with Lorenzana to defraud Monarch, the Court finds it equitable under the circumstances to award Monarch its reasonable attorneys' fees. *See Covenant Capital Partners v. Soil Savers, Inc.*, No. 3:06-cv-0399-0, 2008 WL 2941125, at *10–11 (N.D. Tex. July 30, 2008) (citing *Citizens Ins. Co. of Am. v. Hakim Daccach*, 105 S.W.3d 712, 725 (Tex. App.—Austin 2003), *rev'd on other grounds*, 217 S.W.3d 430, 460 (Tex. 2007)).

Although the Aurrecoechea Defendants do not dispute Monarch's right to recover reasonable attorneys' fees, they contend Monarch overstated its attorneys' fees by at least $157,713.63. Specifically, the Aurrecoechea Defendants contend the requested fees should be reduced because Monarch improperly seeks fees for "general and ambiguous entries." Resp. [#189] at 7. Moreover, the Aurrecoechea Defendants contend Monarch has failed to adequately segregate time spent prosecuting its successful TSA claims from time spent prosecuting its other claims.

As an initial matter, the Court notes Monarch has elected to use the lodestar method to establish its attorneys' fees and therefore "bears the burden of documenting the hours expended on the litigation and the value of those hours." *See Olivas*, 370 S.W.3d at 761. In analyzing the lodestar method, courts must "obtain sufficient information to make a meaningful evaluation of the application for attorney's fees" and exclude "[c]harges for duplicative, excessive, or inadequately documented work[.]" *Id.* at 762. At a minimum, an attorney should provide "evidence of services performed, who performed them, and at what hourly rate, when they were performed, and how much time the work required." *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014). In this case, Monarch submitted an affidavit from its counsel, Daniel Byrne, and three

invoices for the legal services Byrne's firm billed to Monarch for work in this case. Each invoice reveals the hourly rate charged by each attorney and paralegal, the worked performed by each attorney and paralegal on each date, and the amount of time devoted to each aspect of the work performed. The time expended by each attorney or paralegal was then multiplied by their respected hourly rates to determine the total amount of fees Monarch incurred.

In his affidavit, Byrne attests the total cost of legal services provided in this lawsuit was $318,799, but because Byrne's firm provided "significant professional courtesy discounts to Monarch," the amount of attorneys' fees Monarch actually paid was $285,569. Pl.'s Mot. Att'y Fees [#185-1] Ex. A (Byrne Decl.) ¶ 3. According to Monarch, $182,554 represents the portion of its attorneys' fees attributable to its TSA claims. To determine this amount, Byrne segregated his firm's fees into three distinct subsets based on the claims, tasks, and parties involved to reflect the recoverable fees. Group One represents fees related solely to claims for which Monarch is not entitled to recover attorneys' fees, such as its claims that were dismissed or unsuccessful. Group Two represents fees related solely to its TSA claims. Group Three represents fees related to all of Monarch's then-pending cause of action, where the fees incurred relative to its TSA claims were inextricably intertwined with fees incurred in connection with other claims. Group Three is further broken down into two sub-groups: (1) "Pretrial Group Three fees," which Monarch defines as fees incurred through October 31, 2016, related to the prosecution of its TSA claims, and (2) "Trial-Related Group Three fees" incurred after October 31, 2016, which Monarch claims were "expended only on claims that were actually tried: the TSA Claims, as well as the claims for federal securities law violations, common law fraud, and the remaining claims against Martinez." Byrne Decl. ¶ 5. Monarch seeks to recover 70% of the Pretrial Group Three fees and 90% of the Trial-Related Group Three fees, claiming this

7

percentage of fees would have been necessary even if Monarch had prosecuted only its TSA claims. The breakdown of fees per group is as follows:

| Group Two (100% Requested) | Pretrial Group Three (70% Requested) | Trial-Related Group Three (90% Requested) |
|---|---|---|
| $18,621.00 | $154,160.00 | $61,915.00 |

Having reviewed Monarch's billing records, the Court finds many of the redacted time-entry descriptions are too vague to allow the Court to form an opinion as to the reasonableness of the fees requested. "Redaction of billing records is acceptable as long as the court has sufficient information to form an opinion on the reasonableness of the fees." *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009) (applying the lodestar method to determine reasonable attorneys' fees in copyright infringement case). Thus, "[r]edacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended." *Id.*; *see also 2002 Irrevocable Trust for Richard C. Hvizdak v. Shenzhen Dev. Bank, Co.*, No. 2:08–CV–556, 2011 WL 4112776, at *7 (M.D. Fla. Sept. 15, 2011) (stating that rather than filing invoices redacted to the point of obscuring the court's ability to assess reasonableness "[i]f Defendant wanted to maintain the confidentiality of the information, Defendant should have filed a motion to submit an unredacted copy of the billing records under seal"). In this case, a number of entries simply provide, "email DB regarding [redacted]" or "discuss [redacted] with CB." Pl.'s Mot. Att'y Fees [#185-3] Ex. A-2 (Invoice Part 1) at 16, 17. One entry provides no more information than "research re: [redacted]." *Id.* at 21. These entries do not identify the subject of the attorneys' research or communications, and therefore fail to provide sufficient information to assess whether the time expended was reasonable in prosecuting Monarch's TSA claims. *See Randolph*, 634 F. Supp. 2d at 800 (reducing fees for entry which simply stated "E-mail correspondence").

8

"[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir. 2000). A review of the entries marked as Group Two fees reveals about 30% of the hours billed were too heavily redacted to provide the Court with sufficient information to form an opinion as to the requested fees. A similar review of Group Three fees reveals about 60% of the entries marked as Pretrial Group Three fees and 55% of the entries marked as Trial-Related Group Three fees were too heavily redacted to provide adequate information. The Court therefore reduces Group Two fees by 30%, Pretrial Group Three fees by 60%, and Trial-Related Group Three fees by 55%, which results in the following totals:

| Group Two (100% Requested) | Pretrial Group Three (70% Requested) | Trial-Related Group Three (90% Requested) |
|---|---|---|
| $13,034.70.00 | $61,664.00 | $27,861.75.00 |

Monarch also seeks a $3,500 flat fee for the preparation of Monarch's motion for attorneys' fees, claiming this amount "represents a significant discount over the standard hourly rates incurred and to be incurred in connection with this Application given the complexities of the allocation process." Byrne Decl. ¶ 6 n.5. But Monarch declined to submit any evidence to support this amount, such as documentation indicating the number of hours expended per task, by whom, for what, and at what rate. With no corresponding evidence of the time Monarch's counsel spent creating the instant motion for attorneys' fees, the Court cannot determine whether $3,500 is a reasonable award of fees. Monarch's request for $3,500 in attorneys' fees for preparing the present motion is therefore denied. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (counseling that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly"); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir.

9

1995) (denying an award of attorneys' fees based on hours submitted by an attorney where the record was "virtually devoid of any information helpful to a determination of whether or how [the attorney's] hours were spent beneficially on this litigation").

In addition to criticizing Monarch's records as inadequate and ambiguous, the Aurrecoechea Defendants complain Monarch failed to exclude hours expended litigating other claims against other defendants. Although Monarch's time entries do not specify which hours were spent on which claims, the Aurrecoechea Defendants apparently believe a reduction is warranted given the sheer number of defendants who were dismissed or settled throughout this case, as well as the numerous claims Monarch either voluntarily dismissed or were unable to prove at trial. Under Texas law, where a plaintiff prevails on some but not all of his or her claims, the plaintiff "must segregate recoverable from unrecoverable fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W. 3d 299, 313 (Tex. 2006). But the Texas Supreme Court established an exception to this general rule when a case involves multiple causes of action that are so "inter[t]wined to the point of being inseparable." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991). Causes of action are inextricably intertwined when discrete legal services advance both successful and unsuccessful claims. *Chapa*, 212 S.W.3d at 313–14. In those cases, legal services need not be separated when calculating attorneys' fees. *Id.* For example, to the extent legal services such as preparing requests for standard disclosures or voir dire of the jury would have been incurred on a recoverable claim alone, "they are not disallowed simply because they do double service." *Id.* at 313.

In this instance, Monarch was not required to keep separate time records in drafting each paragraph of its complaint, even though certain portions of the complaint related solely to its claims for federal securities law violations or fraud. Instead, an attorney's opinion as to the

10

amount of segregated attorneys' fees is sufficient if it states the percentage of drafting time that would have been necessary even if, for example, there were no claims for federal securities law violation or conspiracy. *Chapa*, 212 S.W.3d at 314; *see also Flagship Hotel, Ltd. v. City of Galveston*, 117 S.W.3d 552, 566 n.7 (Tex. App.—Texarkana 2003, pet. denied) ("Flagship argues that the segregation standard is difficult to meet. We disagree and note that segregated attorney's fees can be established with evidence of unsegregated attorney's fees and a rough percent of the amount attributable to the breach of contract claim."). Here, Byrne attests, "when tasks involved both TSA Claims-related matters and other tasks, the charges were allocated such that the amounts requested are only those that, in my opinion, were incurred for the TSA Claims-related charges." Byrne Decl. ¶ 4. As explained, Byrne segregated Monarch's fees into three distinct subsets and only seeks to recover the percentage of its Group Two and Group Three fees incurred in prosecuting the TSA claims. Monarch therefore provided evidence of the unsegregated amount of attorneys' fees as well as an estimation of the amount attributable to its TSA claims. Under Texas law, this is sufficient to satisfy its burden to segregate.

In light of the foregoing, the Court awards Monarch its proposed percentage of fees for Group Two (100%), Pretrial Group Three (70%), and Trial-Related Group Three (90%), which results in the following amounts:

| Group Two | Pretrial Group Three | Trial-Related Group Three |
|---|---|---|
| $13,034.70 | $43,164.80 | $25,075.58 |

In total, Monarch is entitled to recover $81,275.08 in reasonable attorneys' fees for successfully prosecuting its TSA claims against the Aurrecoechea Defendants.

B.     **Fernando Aurrecoechea's Motion for Attorneys' Fees**

Fernando Aurrecoechea claims he is entitled to recover $20,800 in attorneys' fees expended in defending against Monarch's Texas Theft Liability Act (TTLA) claim. In its third

11

amended complaint, Monarch brought a derivative claim on behalf of Wellness, claiming Fernando Aurrecoechea violated the TTLA by misappropriating Wellness' funds. Third Am. Compl. [#103] ¶¶ 63–66. Four months after filing its third amended complaint, Monarch moved to dismiss its derivative claims, including its TTLA claims. *See* Pl.'s Mot. Dismiss [#133]. The Court granted on the first day of trial. *See* Order of Nov. 7, 2016 [#160].

Section 134.005(b) of the TTLA provides that "[e]ach person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." TEX. CIV. PRAC. & REM. CODE § 134.005(b). "The award of attorney's fees under this section to the prevailing party is mandatory." *Arrow Marble, LLC v. Estate of Killion*, 420 S.W.3d 59, 61 (Tex. App.—El Paso 2012, no pet.). A defendant is generally not a prevailing party when the plaintiff dismisses its claims without prejudice. *Epps v. Fowler*, 351 S.W.3d 862, 869 (Tex. 2011). However, the Texas Supreme Court has recognized an exception to this general rule when a plaintiff dismisses its claims in order "to circumvent unfavorable legal restrictions or rulings." *Id.* at 870. Thus, "a defendant may be a prevailing party when a plaintiff nonsuits without prejudice if the trial court determines, on the defendant's motion, that the nonsuit was taken to avoid an unfavorable ruling on the merits." *Id.*

To make this determination, courts are directed to draw inferences "from the course of events in the lawsuit." *Id.* "A number of factors may support an inference that a plaintiff has nonsuited in order to avoid an unfavorable ruling," including the timing of the nonsuit, the plaintiff's failure to respond to discovery requests that could support an adverse judgment, or the existence of procedural obstacles, such as the plaintiff's inability to join necessary parties. *Id.* at 870–71.

Fernando Aurrecoechea insists he is the prevailing party because Monarch dismissed its TTLA claim without prejudice in order to avoid an unfavorable ruling on the merits. Def.'s Mot. Att'y Fees [#186] at 4. However, the Court explained to the parties on numerous occasions that it tries civil cases on the clock. In this case, each side was allowed nine hours in trial. Prior to docket call on October 28, 2016, Monarch had ten claims pending against eight defendants. Considering the finite amount of time allotted to each side, the Court at docket call encouraged Monarch to streamline its case by narrowing the issues to be decided at trial. Shortly thereafter, Monarch moved to dismiss its derivative claims. In making this request, Monarch expressly explained, "[t]his will simplify the trial of this case by eliminating three parties and several causes of action from dispute." Pl.'s Mot. Dismiss [#133] ¶ 2. This suggests Monarch was attempting to heed the Court's advice rather than avoid an unfavorable ruling on the merits.

Moreover, contrary to Fernando Aurrecoechea's representations in his motion for attorneys' fees, Monarch produced evidence at trial indicating Fernando Aurrecoechea did, in fact, misappropriate Wellness' funds. For instance, Lorenzana testified Fernando Aurrecoechea transferred $45,000 from Wellness to Lorenzana, not for the benefit of Wellness, but so Lorenzana could pay back funds he took from his firm's IOLTA account. As the Supreme Court has stated, evidence that the suit was meritorious when it was filed "may indicate that the defendant has not prevailed and is therefore not entitled to attorney's fees." *Epps*, 351 S.W.3d at 871.

Despite this evidence, Fernando Aurrecoechea maintains Monarch's TTLA claim was without merit because the state court judgment precludes Monarch from asserting this claim. *See* Def.'s Mot. Att'y Fees [#186] at 3. To establish claim preclusion, Fernando Aurrecoechea would need to show: "(1) the parties are identical or in privity; (2) the judgment in the prior action was

13

rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 (5th Cir. 2016) (quoting *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)). Fernando Aurrecoechea, as the party asserting claim preclusion, has the burden of proving preclusion is appropriate. *Murchison Capital Partners, L.P. v. Nuance Commc'n, Inc.*, 625 F. App'x 617, 621 (5th Cir. 2015).

To determine whether two cases involve the same cause of action, the court must decide whether the two actions are based on the same nucleus of operative facts. *Cisco Sys.*, 301 F. Supp. 2d at 602. In other words, if the "factual scenarios of the two actions parallel, the same cause of action is involved in both." *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994). In this instance, Fernando Aurrecoechea has made no effort to explain in either his motion for attorneys' fees or his response to Monarch's fees motion whether the underlying cause of action involved the same nucleus of operative fact as Monarch's dismissed TTLA claim. *See, e.g.*, Def.'s Mot. Att'y Fees [#186] at 3 (stating without explanation that Monarch dismissed its TTLA claim "arguably because its counsel knew that it could not bring those derivat[ive] claims in this proceeding as they were tried and denied in the underlying State Court action"); Resp. [#189] at 5 (stating without explanation that Monarch's counsel "should have known that it could not have brought many of its claims in this proceeding, including the derivative claims"). Having failed to prove Monarch's TTLA claim was dismissed to avoid an unfavorable ruling on the merits, Fernando Aurrecoechea cannot establish he is a prevailing party under the TTLA. His motion for attorneys' fees is therefore denied.

## III. Bill of Costs

### A. Legal Standard

As the prevailing party, Monarch moves for its costs. "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d). Rule 54(d)(1) "contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006). This presumption in favor of awarding costs means "the prevailing party is prima facie entitled to costs," and the denial of costs is "in the nature of a penalty." *Id.* at 793–94 (citation omitted). A court "may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so." *Id.* at 794 (citation omitted).

A district court generally has wide discretion in awarding costs, but this discretion is not unfettered. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). The court's discretion in taxing costs against an unsuccessful litigant is limited to the following recoverable costs:

(1)   Fees of the clerk and marshal;

(2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)   Fees and disbursements for printing and witnesses;

(4)   Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)   Docket fees under section 1923 of this title; and

(6)   Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. The party seeking to recover costs bears the burden of proving the amount of the costs and their necessity. *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994).

**B.     Application**

In its bill of costs, Monarch requests an award of $12,813.25. The Aurrecoechea Defendants claim Monarch has overstated its recoverable costs by at least $11,062.40. Specifically, the Aurrecoechea Defendants claim the bill of costs includes unrecoverable private process server fees, unnecessary transcript fees, and the general submission of printing fees. The Court addresses each of the Aurrecoechea Defendants' objections below.

**i.     Subpoena Service Fees**

Monarch seeks $944.15 in "[f]ees for service of summons and subpoena" which Monarch paid to private process servers. Bill of Costs [#184] at 1. The Aurrecoechea Defendants objects to these fees, because fees for private process servers are not generally recoverable under § 1920. Indeed, "absent exceptional circumstances, the costs of a private process server are not recoverable under Section 1920." *Marmillion v. American Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010). Monarch did not argue and has not demonstrated that exceptional circumstances warrant an award of private process server costs. *See id.* Therefore, the Aurrecoechea Defendants' objection to the private process server fees is sustained. Monarch's bill of costs is reduced by $944.15.

**ii.    Transcript Fees**

Monarch seeks $11,263.20 in "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in this case." Bill of Costs [#184] at 1. This figure is derived from costs associated with printed and electronically recorded deposition transcripts of Alejandro Aurrecoechea, Fernando Aurrecoechea, Nash Martinez, Lucy Cadena, Wayne Cadena, Elias

16

Lorenzana, Jr., and Elias Lorenzana, M.D. The Aurrecoechea Defendants object to most of these costs, claiming Monarch has failed to explain why these deposition costs were necessary, since the only transcripts used at trial were the printed deposition transcripts of the Aurrecoechea Defendants.

Costs related to printed or electronically recorded transcripts are recoverable when they are necessarily obtained for use in the case. 28 U.S.C. § 1920. "[A] deposition need not be introduced into evidence at trial in order to be 'necessarily obtained for use in the case.'" *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991). "If, at the time it was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery, it may be included in the costs of the prevailing party." *Id.*

At trial, Monarch used only two of the seven printed deposition transcripts it purchased, and none of the electronically recorded deposition transcripts. Although the Aurrecoechea Defendants have objected to Monarch's bill of costs on this ground, Monarch has made no attempt to justify the recovery of these costs as necessarily obtained for use in the case. Indeed, Monarch chose not to support its bill of costs with an affidavit explaining why these costs were necessary, nor did it file a response to the Aurrecoechea Defendants' objections. Because Monarch has failed to show why the unused transcripts were necessary, the Aurrecoechea Defendants' objection to the unused transcript costs is sustained, and the Court denies $9,512.35 of the costs for printed and electronically recorded depositions.

The Aurrecoechea Defendants further contend the remaining requested costs of $1,750.85—which represent the costs of the Aurrecoechea Defendants' printed deposition transcripts—should be reduced in proportion to the TSA claim's "role in the case." Resp. [#189] at 3. According to the Aurrecoechea Defendants, because the TSA claim constituted one of ten

17

claims asserted by Monarch, Monarch should only recover 1/10 of the remaining $1,750.85. However, the appropriate question is whether the deposition transcripts were necessarily obtained for use "*in the case*," 28 U.S.C. § 1920(2) (emphasis added), and the Aurrecoechea Defendants do not dispute that these deposition costs were necessarily obtained to prove at least some of Monarch's claims in this case. The Aurrecoechea Defendants' objection is therefore overruled and Monarch's remaining requested costs for transcript fees are awarded.

### iii.   Printing Fees

Monarch seeks $20.70 in "[f]ees of the Clerk" and $585.20 in "[f]ees for printing." This figure appears to be derived from the cost Monarch incurred in printing "[e]lectronic records" and making "[p]hotocop[ies]." Bill of Costs [#184] at 1. The Aurrecoechea Defendants object to the entirety of the requested amount, because the invoices do not specify what is being printed or copied.

The party seeking recovery of its costs bears the burden of proving the amount and necessity of its costs. *See Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994). "Although prevailing parties do not have to justify every single photocopying cost, they do have to provide enough information for the Court to be able to make a reasonable determination." *Honestech, Inc. v. Sonic Sol.*, 725 F. Supp. 2d 573, 584 (W.D. Tex. 2010). Here, Monarch's invoice simply reveals it incurred $20.70 in costs from "[e]lectronic records" and $585.20 in costs from "[p]hotocop[ies]." Monarch filed no supporting affidavit attempting to explain what these copies were for or why they were necessary costs, nor did it attempt to explain these costs in response to Aurrecoechea Defendants' challenge to the requested costs as unsupported by sufficient detail. Without any explanation regarding these costs, the Court cannot determine

whether they were necessarily obtained for use in this case. The Court therefore reduces Monarch's bill of costs by $605.90.

After the denied costs are subtracted, Monarch's final award of costs amounts to $1,750.85.

## Conclusion

In sum, the Court awards Monarch $81,275.08 in attorneys' fees and $1,750.85 in costs taxable under § 1920.

Accordingly,

    IT IS ORDERED that Defendants Alejandro Aurrecoechea and Fernando Aurrecoechea's Motion for a New Trial or to Amend the Judgment [#188] is DENIED;

    IT IS FURTHER ORDERED that the Court's Judgment of December 6, 2016 is AMENDED to reflect the Court's previous denial of Defendants' jurisdictional challenge under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3);

    IT IS FURTHER ORDERED that Plaintiff Monarch Investments, LLC's Motion for Attorneys' Fees [#185] is GRANTED IN PART and DENIED IN PART as described in this opinion;

    IT IS FURTHER ORDERED that Defendant Fernando Aurrecoechea's Motion for Attorneys' Fees [#186] is DENIED;

    IT IS FURTHER ORDERED that Plaintiff Monarch Investments, LLC's Bill of Costs [#184] is PERMITTED IN PART and DENIED IN PART as described in this opinion; and

IT IS FINALLY ORDERED that the Clerk of Court tax costs against Defendants Alejandro Aurrecoechea and Fernando Aurrecoechea in the amount of ONE THOUSAND SEVEN HUNDRED FIFTY AND 85/100 DOLLARS ($1,750.85).

SIGNED this the 16th day of March 2017.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE